# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:23-cv-00023-MR

| | | |
|---|---|---|
| **SHAWN LOUIS GOODMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TIMOTHY DARRYL MOOSE, et al.,** | ) | **ORDER** |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint [Doc. 1]. Also pending is Plaintiff's "Motion for an Order Compelling Defendants to Provide Plaintiff Access to Evidence and Grant Injunction" [Doc. 7]. The Plaintiff is proceeding in forma pauperis. [Doc. 6].

## I.    BACKGROUND

The pro se incarcerated Plaintiff filed this action pursuant to 42 U.S.C. § 1983 addressing his transfer from the Harnett Correctional Institution to the Mountain View Correctional Institution (MVCI), and incidents that allegedly occurred at the MVCI where he still resides. He names as Defendants in their official and individual capacities: Timothy Darryl Moose, the chief deputy secretary of the North Carolina Department of Public Safety (NCDPS); Larry Williamson, the western regional director of NCDPS; Mike

Slagle, the warden of MVCI; Kella Jones Phillips, a correctional captain at MVCI; Dexter Gibbs, the associate warden of MVCI; Robert Mask, a unit manager at MVCI; John Garland and David Hoilman, correctional officers at MVCI; Cathy Judge, the warden of Harnett CI; Jimmy Dorman, a correctional captain at Harnett CI; and Sugeyl Pelaez, a correctional lieutenant at Harnett CI.

The Plaintiff asserts claims under the First, Eighth, and Fourteenth Amendment rights for "retaliatory transfer ..., beating, verbal abuse, ..., cruel and unusual punishment, due process violations, denial of access to the courts and freedom of speech." [Id. at 3, 23]. For injury, he claims shoulder pain, torso pain, and the destruction of his legal property. [Id. at 23]. He seeks a declaratory judgment, preliminary and permanent injunctive relief, compensatory and punitive damages, a jury trial, the costs of this action and any additional relief the Court deems suitable. [Id. at 25].

## II.  STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the

complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.  28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).  Furthermore, a pro se complaint must be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Official Capacity Claims

The Plaintiff purports to sue Defendants, who are state officials, in their individual and official capacities.   However, "a suit against a state official in

his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, the Plaintiff's claims against the Defendants for damages in their official capacities do not survive initial review and they will be dismissed with prejudice.

## B. Confiscation and Destruction of Property

The Plaintiff claims that upon the Plaintiff's arrival at MVCI, Defendant Phillips identified property, including legal books, that would have to be sent home or destroyed; that Phillips forced the Plaintiff to agree to have the property destroyed "under threat of violence" when the Plaintiff could not pay to have the items sent home; and that these events were witnessed by Defendant Mask. [Doc. 1 at 18-19, 21-22].

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997).

4

Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Here, the Plaintiff has failed to state a due process claim based on the deprivation of his personal property because he has an adequate post-deprivation remedy in state tort law. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (stating that intentional deprivations of property do not violate the

5

Due Process Clause if a meaningful post-deprivation remedy for the loss is available); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) ("Under North Carolina law, an action for conversion will lie against a public official who by an unauthorized act wrongfully deprives an owner of his property."). The Court, therefore, will dismiss this claim.

## C. Excessive Force

The Plaintiff claims that when the Plaintiff objected to the confiscation of his property, Defendants Garland and Hoilman yelled at him and "sealed" him in a holding cell that caused "sensory deprivation," panic, and hyperventilation due to claustrophobia [Doc. 1 at 19]; that the Plaintiff collapsed on the floor and Garland and Hoilman entered the cell and "stepped on the Plaintiff's body" [id.]; that the Plaintiff attempted to move out from under Garland's foot and Garland yelled "don't you buck up on me" and threatened to pepper spray him [id. at 19-20]; that the Plaintiff was "pushed roughly onto the wall then onto the bed frame and placed in restraints, hurting his shoulder, wrist and back," and that Phillips witnessed this [id. at 20]; that the Plaintiff requested emergency medical attention for chest pain and dizziness and Garland threatened him with "seg" and "a beating" if he was malingering, and he was taken to medical in full restraints [id. at 21]; that

Garland "verbally abused" him while he received medical care [id.]; and that he is suffering "physical abuse" at MVCI [id. at 23].

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The incidents that the Plaintiff has identified are not sufficiently serious. See generally Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (to meet the objective component of the excessive force analysis, the force must be "nontrivial"). Further, the Plaintiff has not alleged any facts to plausibly demonstrate that the Defendants acted in maliciously and sadistically, rather

7

than in the interest of prison safety and security. <u>See</u> Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Simpson v. Welch</u>, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002). The Plaintiff's excessive force claims are, therefore, dismissed.

### D. Deliberate Indifference to a Serious Medical Need

The Plaintiff claims that he is suffering "physical abuse, medical neglect and psychological abuse (shoulder pain and torso pain)" at MVCI. [Doc. 1 at 23].

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. <u>DePaola v. Clarke</u>, 884 F.3d 481, 486 (4th Cir. 2018). The

prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). "A serious psychological impairment can qualify as [a serious] medical need." Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 120 (4th Cir. 1990).

The Plaintiff's claim is too vague and conclusory in that it fails to allege that he has a serious medical or psychological need; he further fails to allege that any Defendant intentionally disregarded an excessive risk to his health and safety. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d 193, 201-02. His suggestion of negligence, without more, does not rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). Accordingly, to the extent that the Plaintiff attempts to assert a claim for deliberate indifference to a serious medical or psychological need, this claim is dismissed.

### E. Denial of Access to the Courts

The Plaintiff appears to claim that the confiscation of some of his legal books deprived him of access to the courts.  [Doc. 1 at 19, 23].

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access.  See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted).  The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement.  See Lewis v. Casey, 518 U.S. 343, 356-57 (1996).  Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim challenging their conviction or conditions of confinement.  See id.  A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim."  Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Here, the Plaintiff fails to allege that a nonfrivolous legal claim was frustrated by the confiscation of some of his legal books. See Alvarez, 518 F.3d at 1155 n.1. Accordingly, this claim is dismissed.

**F.    Free Speech**

The Plaintiff claims that the incidents of July 27, 2022 denied him free speech. [Doc. 1 at 23]. A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." Pell v. Procunier, 417 U.S. 817, 822 (1974). However, he fails to allege any facts that would plausibly suggest that any Defendant violated his right to free speech through his vague allegations. His mere reference to free speech is so vague and conclusory that it fails to satisfy the most basic pleading requirements. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. Accordingly, the Plaintiff's claim that his right to free speech was violated is dismissed for failure to state a claim.

**G.    Grievances and Policy**

The Plaintiff complains that various Defendants violated or failed to properly enforce prison policies, and mishandled or denied his grievances. [Doc. 1 at 14, 18-19, 22]. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily

established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

Further, "[a]n inmate thus cannot bring a § 1983 claim alleging denial of a

specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533,

541 (4th Cir. 2017). A policy violation does not rise to the level of a § 1983

claim absent a plausible allegation of an underlying constitutional violation.

See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013)

(unpublished) (holding that "prison officials' failure to follow internal prison

policies are not actionable under § 1983 unless the alleged breach of policy

rises to the level of constitutional violation"). Accordingly, the Plaintiff's

references to violations of policies and the mishandling or denial of

grievances fail to state a § 1983 claim and they are dismissed.

### H.    Retaliatory Transfer

The Plaintiff contends that Williamson told his wife that the Plaintiff is

well known in Raleigh for filing grievances and that he was transferred to

MVCI at the behest of Harnett CI staff, i.e., Defendants Judge, Dorman, and

Palaez, "to retaliate for past complaints against them" [Doc. 1 at 22-23]; that

Dorman taunted him about the transfer [id. at 17]; and that Moose approved

the transfer "to facilitate the adverse actions taken against [him]" [id. at 23].

These claims are based on actions that occurred while the Plaintiff was

located at the Harnett CI, and the Defendants who allegedly took these

actions are located at the Harnett CI and in Raleigh, both of which are located in the Eastern District of North Carolina. These circumstances pose a joinder issue because the Federal Rules of Civil Procedure allow joinder of defendants in a single action when "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The 'transaction or occurrence test' of [Rule 20] ... 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). However, "Rule 20 does not authorize a plaintiff to add claims 'against different parties [that] present[ ] entirely different factual and legal issues.'" Sykes v. Bayer Pharm. Corp., 548 F. Supp. 2d 208, 218 (E.D. Va. 2008) (internal quotations omitted). "And, a court may 'deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of [promoting convenience and expediting the resolution of disputes], but will result in prejudice, expense, or delay.'" Id. (quoting Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007)). This does not, however,

Case 1:23-cv-00023-MR    Document 9    Filed 04/24/23    Page 13 of 18

provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated.  See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (ruling that district court should not have allowed prisoner to bring unrelated suits against unrelated defendants); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997).

Moreover, the Court is mindful that preventing unrelated claims against unrelated defendants not only serves the requirements of Rule 20, but also furthers the goals of the Prison Litigation Reform Act ("PLRA").  See George, 507 F.3d at 607; accord Fannin v. Sellers, 2020 WL 6808771, at *3 (E.D. Va. Nov. 19, 2020); Coles v. McNeely, 2011 WL 3703117, at *3 (E.D. Va. Aug. 23, 2011) ("The Court's obligations under the PLRA include review for compliance with Rule 20(a)"), aff'd 465 F. App'x 246 (4th Cir. 2012).

The allegedly retaliatory classification decisions relating to the Plaintiff at Harnett CI did not occur in this District and do not constitute the same transaction or occurrence as the incidents that allegedly occurred at MVCI. See Burns v. Wexford Health Servs., 2019 WL 5394180, at *3 (S.D. Ill. Oct. 22, 2019) (unpublished) ("discretionary actions taken by different officials at different prisons do not constitute the same series of transactions and occurrences with questions of fact common to each of the defendants.").

The appropriate remedy is to sua sponte dismiss the improper defendants and sever the unrelated claims. 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see, e.g., Nunn v. N.C. Legis., 2015 WL 1713885, at *4 (E.D.N.C. Apr. 15, 2015) (on initial review, dismissing without prejudice a prisoner's claims that occurred at prisons located in other districts), aff'd, 620 F. App'x 173 (4th Cir. 2015).

Therefore, the Plaintiff's retaliatory transfer claims are dismissed without prejudice to the Plaintiff bringing them in the appropriate venue.[1]

## I.      Motion for Injunctive Relief

In his "Motion for an Order Compelling Defendants to Provide Plaintiff Access to Evidence and Grant Injunction," the Plaintiff asks the Court to "grant [him] access to his legal property" in order to satisfy the PLRA's exhaustion requirements, and to transfer him due to "threats of serious injury or possible death received since the filing of this action." [Doc. 7 at 1]. The Motion is construed as seeking preliminary injunctive relief.

---

[1] The Court makes no determinations about the potential merit or procedural viability of these claims.

Preliminary injunctive relief is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20. The Plaintiff has not established any of the elements that would warrant preliminary injunctive relief. Therefore, this Motion is denied.

## IV. CONCLUSION

In sum, the Plaintiff has failed to state a claim against any Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The Court will dismiss the claims against the Defendants for damages in their official capacities with

prejudice. The remaining claims are dismissed without prejudice and the Plaintiff's Motion seeking preliminary injunctive relief is denied.

The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted, in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should the Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] is **DISMISSED WITHOUT PREJUDICE**, except for the claims against the Defendants for damages in their official capacities which are **DISMISSED WITH PREJUDICE**.

2. The Plaintiff shall have **thirty (30) days** in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without further notice.

17

3. The Plaintiff's Motion for an Order Compelling Defendants to Provide Plaintiff Access to Evidence and Grant Injunction" [Doc. 7] is construed as a Motion for Preliminary Injunction and it is **DENIED**.

The Clerk is respectfully instructed to mail the Plaintiff a blank § 1983 complaint form and a copy of this Order.

**IT IS SO ORDERED.**

Signed: April 24, 2023

Martin Reidinger
Chief United States District Judge