# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:23-cv-00023-MR

| | |
|---|---|
| SHAWN LOUIS GOODMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| TIMOTHY DARRYL MOOSE, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 30] and the Defendants' Motion to Seal [Doc. 38].

**I.    BACKGROUND**

The Plaintiff Shawn Louis Goodman filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Mountain View Correctional Institution ("MVCI").[1]  The Plaintiff's unverified Complaint failed initial review and the Plaintiff was granted the opportunity to amend. [See Doc. 1: Compl.; Doc. 9: Order on Initial Review].  The unverified Amended Complaint passed initial review on claims that Defendant John Garland used excessive force by stomping on the Plaintiff's torso and

---

[1] The Plaintiff presently resides at the Nash Correctional Institution.

threatening to spray him with pepper spray on July 27, 2022, and that David Hoilman and Kella Jones Phillips were nearby when this occurred but failed to intervene. [Doc. 10: Am. Compl. at 16; see Doc. 12: Initial Rev. Am. Compl.)]. The Court exercised supplemental jurisdiction over the Plaintiff's related assault and battery claims. [Id.]. The Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages, a jury trial, costs, and any additional relief that the Court deems suitable. [Doc. 10: Am. Compl. at 21].

The Defendants filed a Motion for Summary Judgment [Doc. 30: MSJ] and supporting exhibits, which they have moved to seal [Docs. 32-36: MSJ Exhibits; Doc. 38: Motion to Seal]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 40: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired. These matters are ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is

2

Case 1:23-cv-00023-MR    Document 41    Filed 11/12/24    Page 2 of 15

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable

jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

4

<u>Scott</u>, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

Viewed in the light most favorable to the Plaintiff, the following is a summary of the relevant portions of the undisputed forecast of evidence.

The Plaintiff was transferred from Harnett CI to MVCI on July 27, 2022, and his property was inventoried. [<u>See</u> Doc. 32: MSJ Ex at 10-17 (Harnett and MVCI personal property inventories)]. Upon arriving at MVCI, his excess items, including two books, oil, and nail clippers, were "Thrown Away by Inmate." [<u>Id.</u> at 17].

That same afternoon, the Plaintiff was seen by a nurse for "sharp chest pain to his left shoulder and left upper area of his chest." [Doc. 34 at 1]. The Plaintiff, who had a history of hypertension and heart disease was "[n]ot taking his [blood pressure] meds" at that time. [<u>Id.</u>]. No history of trauma was noted. [<u>Id.</u>]. The Plaintiff received treatment, including the "meds he missed" that morning. [<u>Id.</u>]. This relieved his pain, and he was instructed to follow up as needed. [<u>Id.</u>]. The Plaintiff next received medical care on August 20, 2022 for a basketball injury. [Doc. 35: MSJ Ex at 4].

The Plaintiff filed three requests pursuant to the prison Administrative Remedy Procedure ("ARP") while he was at MVCI, none of which alleged a use of excessive force. [Doc. 37: Slagle Decl. at ¶ 8]. He filed grievances:

5

on September 15, 2022, addressing the destruction of his property upon arriving at MVCI; on November 8, 2022, addressing multiple complaints including the conditions of his confinement, retaliation, and the destruction of legal property; and on December 5, 2022, addressing the conditions of his confinement and requesting a transfer. [Doc. 32: MSJ Ex at 2-4 (Grievance No. 4855-22-HPOD-18801); Doc. 36: MSJ Ex at 24-26 (Grievance No. 4855-22-BPOD-18890); Doc. 36: MSJ Ex at 2-3 (Grievance No. 4855-22-BPOD-19422)]. The September 15th and December 5th grievances were denied, as were the Plaintiff's appeals, and the November 8th grievance was rejected because it addressed more than one incident. [Doc. 32: MSJ Ex at 6-9; Doc. 36: MSJ Ex at 5-7, 27].

**IV. DISCUSSION**

**A. Exhaustion**

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's

6

Case 1:23-cv-00023-MR    Document 41    Filed 11/12/24    Page 6 of 15

exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading it and proving lack of exhaustion. Id. at 216.

The North Carolina Department of Adult Corrections ("NCDAC")[2] has established a three-step procedure governing submission and review of

---

[2] Previously known as the North Carolina Department of Public Safety (NCDPS).

7

Case 1:23-cv-00023-MR    Document 41    Filed 11/12/24    Page 7 of 15

inmate grievances in its ARP.  Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008).  Inmates are required to "properly" exhaust administrative remedies in accordance with ARP.  Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726.  An inmate does not exhaust his administrative remedies until he completes all three steps of the ARP.  Moore, 517 F.3d at 726.

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies.  Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

Here, the Defendants have forecast evidence that the Plaintiff failed to exhaust the ARP with regard to any alleged use of excessive force/failure to intervene while he was at MVCI.  The Plaintiff has failed to demonstrate that he exhausted his administrative remedies with regard to his claims, or that the ARP was not available to him.  Accordingly, the Defendants' Motion for Summary Judgment will be granted on this ground.[3]

---

[3] Ordinarily, dismissal for failure to exhaust administrative remedies is without prejudice. However, the Plaintiff also has failed to establish the existence of a genuine dispute of material fact regarding the merit of his § 1983 claims as discussed *infra*. Therefore, the dismissal will be with prejudice.

## B. Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain

9

or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

There is no forecast of evidence that Defendant Garland ever used force against the Plaintiff or threatened him with the same, or that Defendants Hoilman or Phillips failed to intervene in a violation of the Plaintiff's rights. Accordingly, the Defendants' Motion for Summary Judgment will be granted as to the Plaintiff's excessive force and failure to intervene claims.

C. **Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably

believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that any Defendant violated his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

**D. Supplemental Jurisdiction**

On initial review, the Court exercised supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims that were based on the same incidents as the § 1983 excessive force and failure to intervene claims that had passed initial review. [See Doc. 12: Initial Rev. Am. Compl. at 4].

11

The Plaintiff has failed to forecast any evidence whatsoever in support of his North Carolina assault and battery claims. As discussed *supra*, the related § 1983 claims have been dismissed. The Plaintiff's North Carolina claims that are based on the same conduct likewise fail. See, e.g., Njang v. Montgomery Cnty., Md., 279 F. App'x 209, 216 (4th Cir. 2008) (recognizing that "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence"); Wilcoxson v. Painter, No. 5:13-cv-732-FL, 2016 WL 866327, at *10 (E.D.N.C. Mar. 3, 2016) ("[w]here a law enforcement officer's use of force was reasonable for the purposes of finding qualified immunity to a § 1983 excessive force claim, it is fatal to the Plaintiff's state law tort claims"). Accordingly, the Defendants' Motion for Summary Judgment is granted with respect to the Plaintiff's North Carolina assault and battery claims.

### E. Motion to Seal

There is a "presumption under applicable common law and the First Amendment that materials filed in this Court will be filed unsealed." LCvR 6.1(a); see Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988) (First Amendment right to access to court proceedings includes criminal and civil cases). However, a court has authority to seal documents before it based upon the court's inherent supervisory authority over its own

files and records.  See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978).  The denial of access to documents under the First Amendment must be necessitated by a compelling government interest that is narrowly tailored to serve that interest.  See In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986); In re State-Record Co., Inc., 917 F.2d 124, 127 (4th Cir. 1990).  Before sealing judicial records, a court must identify the interest that overrides the public's right to an open court, and articulate supporting findings specific enough that a reviewing court can determine whether the order was properly entered.  See Press–Enterprise Co. v. Superior Ct. of Ca., 464 U.S. 501, 510 (1984); LCvR 6.1.  When addressing motions to seal, the Court must consider alternatives to sealing and specify whether the sealing is temporary or permanent, and also may redact such orders in its discretion.  LCvR 6.1.

The Defendants have filed a Motion asking the Court to seal Exhibits 1 through 6 of its Memorandum in support of their motion for summary judgment.  [Doc. 38: Motion to Seal]. The Defendants generally assert that these Exhibits contain confidential prison records and information related to privacy of NCDAC records that are protected and classified pursuant to N.C. Gen. Stat. § 148-76.  [See Doc. 39: Seal Memo.].  However, at least ten of the pages that the Defendants seek to seal appear to be public information.

For instance, these exhibits include prison policies and a prison handbook that, the Defendants represent, are available to inmates [Doc. 37: Attachments at 5-9, 11-12; Doc. 37: Slagle Decl. at ¶ 6], as well as several pages of grievance records that the Plaintiff had previously filed unsealed [Doc. 8-1 at 1-7 (Grievance No. -18801, the prison's screening response, and the Step 1 and 3 responses)].

The Motion to Seal is, therefore, denied without prejudice to the Defendants filing an amended motion that identifies each document they are seeking to seal and setting forth a specific justification for sealing each. Should the Defendants fail to comply, the Clerk will be instructed to unseal Exhibits 1 through 6 in the Court's record (Docket Entries 32 through 37).

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice. The Motion to Seal is denied without prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 30] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Seal [Doc. 38] is **DENIED WITHOUT PREJUDICE**. The Defendants may file an amended Motion to Seal within **fourteen (14) days** of this Order. Should they fail to comply, the Clerk will be instructed to unseal summary judgment Exhibits 1 through 6 (Docket Entries 32 through 37).

**IT IS SO ORDERED.**

Signed: November 11, 2024

Martin Reidinger
Chief United States District Judge

15

Case 1:23-cv-00023-MR    Document 41    Filed 11/12/24    Page 15 of 15